UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| OXANE MATERIALS, INC. | § | CASE NO. 15-32940 |
| (Debtor) | § | (Chapter 11) |
| | § | |

**DEBTOR'S MOTION PURSUANT TO SECTIONS 105(a), 345(b), 363(c) AND 364(a) OF THE BANKRUPTCY CODE FOR (I) AUTHORITY TO CONTINUE TO USE EXISTING CASH MANAGEMENT SYSTEM, (II) AUTHORITY TO MAINTAIN EXISTING BANK ACCOUNT, AND (III) A WAIVER OF THE REQUIREMENTS OF SECTION 345(b) OF THE BANKRUPTCY CODE**

TO THE HONORABLE JEFF BOHM,
UNITED STATES BANKRUPTCY JUDGE:

Oxane Materials, Inc. (the "**Debtor**"), the Debtor-In-Possession in this case, moves this Court to enter an order, pursuant to Bankruptcy Code § 105, allowing the Debtor to maintain and use a pre-petition bank account.  In support thereof, the Debtor would respectfully show as follows:

## I.      <u>JURISDICTION</u>

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Court has the authority to enter the requested relief pursuant to Bankruptcy Code §§105, 345(b), 363(c) and 364(a).

## II.      <u>BACKGROUND</u>

2.      On May 31, 2015 (the "**Petition Date**"), the Debtor filed a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtor is authorized to continue operating its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      The Debtor is a Delaware corporation with its headquarters in Houston, Texas. As of the Petition Date, the Debtor has essentially ceased operations, and is working toward a sale of substantially all of its assets.

4.      The Debtor manufactured and supplied ceramic proppants, which are materials used in oil and gas fracking operations to increase the efficiency of production.  The technology was spun off from the Nanotechnology Institute of Rice University, and the Debtor holds at least 15 patents and has other patents pending.  Though the technology has been successful in operation, the marginal cost of producing the proppants was, at the scale produced, higher than the price that consumers of the products would pay.  The Debtor raised capital through debt and equity financing, but reached the point where additional funding was unavailable.  The Debtor retained Lazard Freres in early 2014 to market the company;  notwithstanding extensive marketing efforts, Lazard was unable to locate a buyer as of the Spring of 2015, and efforts to locate additional capital have been unsuccessful.

5.      The Debtor has over $6.7 outstanding in senior secured debt, approximately $34.7 million in subordinated debt, along with  over $3.5 million in trade debt in trade debt.

6.      Additional information regarding the Debtor's business, capital structure, and the circumstances leading to this chapter 11 case will be contained in one or more declarations that will be filed before any "first day" hearing in this case.

7.      Prepetition, the Debtor maintained its bank accounts at Comerica Bank ("**Comerica**" or the "**Bank**"), consisting of an operating (checking) account, a "holds restricted" Premium Money Market account for corporate credit cards[1], and a Basic Business Checking account opened to fund a letter of credit that was never issued (the "**Bank Accounts**").

---

[1] This account holds $12,000 in restricted cash for the credit card.  The current balance due on the credit card is $5,958.99.  It will be auto drafted from the checking account on June 13.  If the Debtor closes the credit card and notifies the bank, the $12,000 should be transferred to the Operating Account.

Comerica is believed to be authorized depositor of DIP accounts by the United States Trustee's Office. The continued maintenance and use of the Debtor's existing pre-petition operating/checking bank account (the **Operating Account**") is important to the efficiency of the Debtor's cash management system and its financial accounting system.[2]

8.      The Bank Accounts may be identified as follows:

| Account No. | Description | Institution |
|---|---|---|
| .... 9460 | Operating | Comerica Bank |
| .... 9379 | "Holds Restricted" Money Market | Comerica Bank |
| .... 6946 | Basic Business Checking | Comerica Bank |

### III.     RELIEF REQUESTED

9.      By this Motion, the Debtor moves the Court for an order authorizing the Debtor to continue to maintain and use the Operating Account. The Debtor further seeks authorization to have the Operating Account deemed and renamed a debtor-in-possession account under the United States Trustee's rules and regulations.

10.      Prior to the Petition Date and in the ordinary course of its business, the Debtor routinely made deposits and withdrew funds from the Operating Account by checks, wire transfers, and other transfers.

11.      The Office of the United States Trustee's "Operating Guidelines For Chapter 11 Cases" mandates the closure of the Operating Account and the opening of a new account as a result of the filing of this chapter 11 case. If the Debtor is required to comply with these requirements, its operations would be harmed by the disruption, delay and cost that would most certainly result from the closure of its existing Operating Account. Specifically:

---

[2] The "holds-restricted" and letter of credit accounts can be closed.

a.      Oxane utilizes Oracle for financial reporting, invoicing, and accounts payable.  It is an integrated system whereby all check payments are processed through the system.

b.      Oxane utilizes blank check stock for payments.  The checks are generated through the system to a unique check printer.  The system then posts the invoices as paid with check numbers and date.

c.      It would be cost prohibitive to change the MICR (Magnetic Ink Character Recognition) line and the check template to accommodate a new account number for a short period of time.  In addition, the testing process could take as long as 2-3 weeks to ensure that the checks would be accepted by the bank.  This work must be done in a coordinated effort with the bank and an outside Oracle developer.

d.      Oracle tracks all open invoices.  Processing invoices and payments through the system will achieve greater data integrity for completeness for post-filing data requests.

e.      Oxane also utilizes 'positive pay', in conjunction with the blank stock, to help alleviate the opportunity for fraudulent checks, whereby any checks not generated through the system would not clear the bank.

f.      Moving to a manual 'checkbook' will require significantly more time (paid to a contractor) to process payments and maintain records, and will increase the potential for human error.

12.    The Debtor believes that its transition to chapter 11 will be more orderly, with a minimum of harm to operations, if the Operating Account is continued following the Petition Date with the same account number provided, however, that checks issued or dated prior to the Petition Date will not be honored absent a prior order of the Court[3].  By preserving business continuity and avoiding the disruption and delay to the Debtor's collection and disbursement procedures that would necessarily result from closing the Operating Account and opening a new account, all parties in interest will be best served.  The Debtor will ensure that any check to be issued after the Petition Date will be marked "Debtor in Possession" with the case number.

13.    The Debtor requests that the Bank be authorized and directed to continue to service and administer the Operating Account as an account of the Debtor as a Debtor-in-

---

[3] As of the Petition Date, only 5 checks, totaling $2,634.14, are outstanding. All are over 5 months old.

possession, without interruption in the ordinary course, and (absent specific directions from the Debtor to the contrary) to receive, process, honor and pay any and all checks, drafts, wires, automated clearing house transfers and other items, which originate postpetition and are presented to the Bank for payment on a postpetition basis.

14.     The Debtor further request that the Bank be authorized to charge back against the Operating Account (a) any postpetition returned items drawn or presented against the Operating Account, (b) any over advances, credit balances or other customary fees and services charges incurred as a result of returned or dishonored postpetition checks, drafts, wires and other transfers, and (c) any other customary postpetition fees and expenses on the Operating Account which arise in the ordinary course of business, in connection with the use and management of such Operating Account.  The Debtor further requests authority to pay any fees due to the Bank under the applicable bank or account agreements.

15.     By preserving business continuity and avoiding disruption and delay to the Debtor, the Debtor would avoid needless expense of trying to replace the existing Oracle accounting system and pay a contractor to manually process payments and receipts, which will increase the potential for human error.

16.     Accordingly, the Debtor respectfully requests authority to maintain the Operating Account in the ordinary course of business.

17.     In other chapter 11 cases, courts have recognized that strict enforcement of the guidelines does not serve the rehabilitative process of chapter 11.  *See e.g. In re Crescent Resource, LLC, et al.,* Case No. 09-11507 (CAG) (Bankr. W.D. TX June 10, 2009) [Docket No. 15]; *In re Hill Country Galleria*, Case No. 09-11175 (CAG) (Bankr. W.D. Tex. May 18, 2009) [Docket No. 30]; *In re Spectrum Jungle Labs Corp.*, Case No. 09-50455 (RBK) (Bankr.

W.D. Tex. Feb, 5, 2009) [Docket No. 60]; *In re Lexington Precision Corp.*, Case No. 08-11153 (MG) (Bankr. S.D.N.Y. Apr. 2, 2008) [Docket No. 25]; *In re Manchester, Inc.,* Case No. 08-30703 (BJH) (Bankr. N.D. Tex. Feb. 17, 2008) [Docket No. 75]; *In re PRC, LLC*, Case No. 08-10239 (MG) (Bankr. S.D.N.Y. Jan. 25, 2008) [Docket No. 36]; *In re Silicon Graphics, Inc.,* Case No. 06-10977 (BRL) (Bankr. S.D.N.Y. May 10, 2006) [Doc. No. 47], (Bankr. S.D.N.Y. July 19, 2006) [Doc. No. 375]; and *In re Mirant Corp.*, Case No. 03-46590 (DML) (Bankr. N.D. Tex. July 16, 2003) [Docket No. 47].  Similar authorization is appropriate in these chapter 11 cases.

18.     The relief requested in this Motion is critical to minimizing the costs to the Estate and facilitating a prompt sale of the Debtor's assets.

19.     Based on the foregoing, the Debtor submits that the relief requested herein is necessary and appropriate, is in the best interests of its estate and all other interested parties, and should be granted in all respects.

20.     The Debtor further submits that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor for the reasons set forth herein and in the Declaration, Bankruptcy Rule 6003 has been satisfied.

## Notice

21.     No trustee, examiner or statutory creditors' committee has been appointed in this case.  Notice of this Motion has been provided to the United States Trustee for the Southern District of Texas, counsel to the Bank, and the Debtor's twenty (20) largest unsecured creditors. The Debtor submits that no other or further notice need be provided.

**WHEREFORE, PREMISES CONSIDERED**, Oxane Materials, Inc., the Debtor-In-Possession in this case, moves the Court for an order authorizing the Debtor to maintain and use its pre-petition Operating Account as the Debtor's debtor in possession account during the Debtor's chapter 11 case and granting such other relief to which the Debtor may show itself justly entitled.

DATED: June 1, 2015
          Austin, Texas

Respectfully Submitted,

TAUBE SUMMERS HARRISON TAYLOR MEINZER BROWN

      /s/ MORRIS D. WEISS
Eric J. Taube
State Bar No. 19679350
Morris D. Weiss
State Bar No. 21110850
Christopher G. Bradley
State Bar No. 24069407
100 Congress Avenue, Suite 1800
Austin, Texas 78701
(512) 472-5997
(512) 472-5248 (FAX)
etaube@taubesummers.com
mweiss@taubesummers.com
cbradley@taubesummers.com

PROPOSED ATTORNEYS FOR DEBTOR AND DEBTOR IN POSSESSION

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing document has been served electronically upon all parties receiving the Court's ECF Notices on this 1st day of June, 2015, and on the parties listed on the attached Service List by depositing same in the United States First Class Mail (unless otherwise noted) on the 2nd day of June, 2015.


            /s/ Morris D. Weiss
Morris D. Weiss