UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| OXANE MATERIALS, INC. | § | CASE NO. 15-32940 |
| (Debtor) | § | (Chapter 11) |
| | § | |

**EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
AUTHORIZING USE OF CASH COLLATERAL AND
PROVIDING FOR ADEQUATE PROTECTION**

**(Hearing requested for June 5, 2015 at 2:00 p.m.; estimated time: 1 hour)**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Oxane Materials, Inc. ("**Oxane**" or the "**Debtor**"), the debtor and debtor-in-possession in the above captioned chapter 11 case (the "**Bankruptcy Case**"), hereby files this *Emergency Motion for Interim and Final Orders Authorizing Use of Cash Collateral and Providing for Adequate Protection* (the "**Motion**"), as follows:

## I. SUMMARY OF THE RELIEF REQUESTED

1.      By this Motion, pursuant to sections 361 and 363 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtor seeks:

(a)      the entry of the proposed interim order (the "**Interim Order**"), substantially in the form attached as **Exhibit A**, (i) authorizing the use of the Prepetition Secured Lenders' Cash Collateral (defined below) on an interim basis, pursuant to the agreement of the Debtor and Comerica Bank (the "**Lender**");

(ii) granting adequate protection to the Lender[1]; and (iii) modifying the automatic stay to the extent applicable; and

(b) the scheduling of a final hearing (the "**Final Hearing**"), at which the Court will consider granting relief in the form of a final order (the "**Final Order**," and together with the Interim Order, the "**Cash Collateral Orders**").

2. As required under Bankruptcy Rule 4001, the material provisions of the proposed Cash Collateral Orders are summarized as follows, and explained more fully in the sections below:[2]

(i) <u>Name of Entities with Interest in Cash Collateral</u>: Lender; the Debtor; numerous junior secured noteholders.[3]

(ii) <u>Purpose</u>: Funding the Debtor's necessary expenses and professional fees necessary for the orderly and successful administration of this bankruptcy estate. See the proposed budget (the "**Budget**"), attached as <u>**Exhibit B**</u>, for basic information regarding expenditures over the Interim Period (as defined below).

(iii) <u>Material Terms and Duration</u>: Lender will receive adequate protection liens and superpriority claims to the extent of the diminution in value of the Cash Collateral, subject to a carve-out for professional fees. Pursuant to the Interim Order, the Cash Collateral will be used on an interim basis until the Final Hearing, which will be no sooner than fifteen calendar days from the date of this Motion. Pursuant to the Final Order, the relief requested will be made permanent. As part of the Cash Collateral Orders, the Debtor will waive its right to surcharge against its collateral under section 506(c) of the Bankruptcy Code. In addition, the Lender's Pre-Petition Liens will be deemed valid, enforceable, and prior to all other asserted liens, subject to an Investigation Period commencing with the entry of the Interim Order.

(iv) <u>Adequate Protection</u>. The Lender has agreed to the relief requested. The Lender is believed to be the senior secured creditor in all of the affected

---

[1] This Motion and the proposed Interim Order (Exhibit A) will be served on all notice parties identified in Section V of this Motion.

[2] To the extent this Motion is inconsistent with the Cash Collateral Orders, the Cash Collateral Orders shall control. Any capitalized terms used but not defined in this Motion shall have the meanings ascribed to those terms in the Cash Collateral Orders.

[3] As noted below, several other entities may hold security deposits that could fall within the broad definition of Cash Collateral but which are not intended to be included. No validly held security deposits are impacted by the relief sought in this Motion and to be granted in the proposed Interim Order or the anticipated Final Order.

assets.  Under the terms of the Cash Collateral Orders, adequate protection is to be provided to Lender in the form of adequate protection replacement liens and superpriority claims.  No other adequate protection is proposed.

## II. JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY

3.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Court has constitutional authority to determine this matter because the relief sought is not a "matter which, from its nature, is the subject of a suit at the common law, or in equity, or in admiralty."  *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. __, No. 13-935, slip op. at 1 (2015) (quoting *Stern v. Marshall*, 564 U.S. __, 131 S.Ct. 2594, 2609 (2011)).  Rather, the relief sought in this motion "flow[s] from a federal statutory scheme." *Stern*, 131 S.Ct. at 2614.

## III. BACKGROUND

4.      On May 31, 2015 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor continues to manage its properties as a debtor-in- possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.  Neither a trustee nor an examiner has been requested or appointed in the Bankruptcy Case.  No prior request for the relief requested in this Motion has been made.

5.      The Debtor provided oil and gas exploration and production companies with customized proppants (solid materials used to keep hydraulic fractures open), which economically augment oil and gas production from conventional and unconventional oil and gas reservoirs, while also offering the opportunity to reduce the environmental impact of hydraulic fracturing.  The Debtor's assets include both valuable intellectual property and certain lab, manufacturing, and transportation-related assets and materials.  A full description of the business of the Debtor and the events leading up to the filing of the voluntary petition by the Debtor will

be included in a declaration that is in the process of being completed and will be filed with the Court in advance of the hearing on this matter..

6.       The Debtor and the Lender are parties to certain loan agreements, including a Loan and Security Agreement dated as of March 12, 2010 (as the same has been or may be amended, restated or otherwise modified from time to time,[4] the "**Loan Agreement**").  As of the Petition Date, the Debtor's indebtedness to Lender under the Loan Agreement includes unpaid principal in the amount of at least $7,027,122.03, accrued but unpaid interest in the amount of at least $128,752.14, credit card indebtedness in the amount of $6,003.90, and other unpaid fees and expenses plus all other amounts due and owing under the Loan Agreement (the "**Pre-Petition Indebtedness**").  For purposes of this Motion, the Pre-Petition Indebtedness shall include the principal of, and all interest, fees, expenses, and other charges owing in respect of, such Pre-Petition Indebtedness (including attorney's, accountant's, and financial advisor's fees that are reasonable under the Loan Agreement and/or section 506(b) of the Bankruptcy Code).

7.       To secure the Pre-Petition Indebtedness, the Debtor granted the Lender under the terms of the Loan Agreement a continuing security interest in and to all right, title and interest of the Debtor in and to substantially all of the Debtor's presently existing or after-acquired (i) accounts, chattel paper, deposit accounts, documents, equipment, general intangibles, goods, instruments, inventory, investment property, letter of credit rights; (ii) common law and statutory

---

[4] In specific, the Loan and Security Agreement was subsequently amended by (i) that certain First Amendment to Loan and Security Agreement and Waiver, dated as of December 15, 2010; (ii) that certain Second Amendment to Loan and Security Agreement and Waiver, dated as of April 7, 2011; (iii) that certain Third Amendment to Loan and Security Agreement and Waiver, dated as of July 21, 2011; (iv) that certain Fourth Amendment to Loan and Security Agreement and Waiver, dated as of July 11, 2012; (v) that certain Fifth Amendment to Loan and Security Agreement, dated as of December 11, 2012; (vi) that certain Sixth Amendment to Loan and Security Agreement and Consent, dated as of February 11, 2013; (vii) that certain Seventh Amendment to Loan and Security Agreement, dated as of July 25, 2013; (viii) that certain Eighth Amendment to Loan and Security Agreement, dated as of January 9, 2014; (ix) that certain Consent, Waiver and Ninth Amendment to Loan and Security Agreement, dated as of September 25, 2014; and (x) that certain Tenth Amendment to Loan and Security Agreement and Limited Forbearance, dated as of April 9, 2015.

copyrights and copyright registrations; (iii) trademarks, service marks, trade names and service names and the goodwill associated therewith; (iv) patents and patent applications, and licenses and royalties pertaining to such patents; and (v) cash proceeds and/or non-cash proceeds of any of the foregoing (all as more particularly described in the Loan Agreement).

8.      To further secure the Pre-Petition Indebtedness, the Debtor also executed (1) a Continuing Collateral Mortgage, dated as of January 9, 2014 (the "**Mortgage**"), pursuant to which the Debtor granted and assigned to the Lender a first-priority lien and security interest in and upon the property described in the Mortgage; and (2) an Absolute Assignment of Rents and Leases dated as of January 9, 2014 (the "**Assignment of Rents**" and, collectively with the Loan Agreement, the Mortgage, and all related documents, agreements, notes, and financing statements, collectively the "**Indebtedness Documents**"; the foregoing collectively with any and all other property of the Debtor pledged to secure the Pre-Petition Indebtedness, the "**Pre-Petition Collateral**").[5]  The Pre-Petition Indebtedness is cross-collateralized by the Pre-Petition Collateral.

9.      The liens and security interests granted under the Indebtedness Documents, as well as any security interests, liens, mortgages, pledges, and other interests in the Pre-Petition Collateral granted to Lender by any other agreements shall be referred to collectively as the "**Pre-Petition Liens**."   Altogether, the Pre-Petition Liens cover all or substantially all of the Debtor's assets.  As of the date upon which this Motion is filed (and assuming the Pre-Petition liens are all valid, enforceable, and perfected first-priority liens), it is unknown whether the Lender is over- or under-secured, due to the Debtor's lack of certainty regarding the value of the Debtor's various assets.

---

[5] The description of the Pre-Petition Collateral set forth here is for background and information purposes and shall not limit or restrict the scope of the Pre-Petition Collateral as more fully described in the Indebtedness Documents.

10.     The Lender asserts that the Pre-Petition Indebtedness constitutes a legal, valid and binding obligation of the Debtor, enforceable in accordance with its terms, and no portion of the Pre-Petition Indebtedness or any payments made to the Lender or applied to the obligations owing under the Indebtedness Documents prior to the Petition Date is subject to avoidance, subordination, recharacterization, recovery, offset, counterclaim, defense or Claim (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.  In addition, the Lender asserts that the Pre-Petition Liens constitute valid, binding, enforceable and perfected first priority liens that are not subject to avoidance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except insofar as such liens are subordinate to (a) certain liens permitted by the Loan Agreements that are valid, perfected, binding, enforceable and in existence on the Petition Date, and to (b) the Adequate Protection Liens (as defined below), in accordance with the proposed provisions of the Cash Collateral Orders).

11.     Further, it is the Lender's position that (with the exception of certain security deposits[6]) all cash and cash equivalents of the Debtor's bankruptcy estate, whether in the form of cash, negotiable instruments, documents of title, securities, deposit accounts, tariffs, governmental refunds, or in any other form which represents income, proceeds, products, rents, or profits of the Pre-Petition Collateral, wherever located, that are now in the possession, custody, or control of the Debtor, or in which the Debtor will obtain an interest during the pendency of this Bankruptcy Case, constitutes Cash Collateral (as defined in sections 363(a) and/or 552 of the Bankruptcy Code) of the Lender (collectively, the "**Cash Collateral**"); that the Debtor has no interest, directly or indirectly, in any cash that is not Cash Collateral; and that the

---

[6] Several entities may hold security deposits that could fall within the broad definition of Cash Collateral but which are not intended to be included.  No validly held security deposits are impacted by the relief sought in this Motion and to be granted in the proposed Interim Order or the anticipated Final Order.

Lender holds valid, binding, enforceable, and perfected first-priority liens and security interests in the Cash Collateral.

12.     At present, the Debtor is not aware of any reason to doubt the Lender's position concerning the matters stated above, concerning the Pre-Petition Indebtedness, Pre-Petition Liens, or Cash Collateral.   Nonetheless, the Debtor has had only a very brief opportunity to investigate these matters.   Accordingly, the Debtor and Lender have agreed that the Debtor and other parties in interest shall have an opportunity to consider these matters during an Investigation Period as stated below, and to challenge the Lender's positions if they discover grounds upon which to do so.

## IV. RELIEF REQUESTED AND BASIS FOR RELIEF

### Summary of Requested Relief

13.     To continue managing its assets in an orderly manner postpetition, the Debtor requires the use of the Lender's Cash Collateral.   Without use of the Cash Collateral, the Debtor's bankruptcy estate will suffer immediate and irreparable harm.

14.     Lender has agreed to the Debtor's use of the Pre-Petition Collateral, including Cash Collateral, on an interim basis, subject to the terms and conditions provided for in the Interim Order, commencing as of the Petition Date and expiring on the date of the Final Hearing (the "**Interim Period**").   In addition, the Lender has agreed to the Debtor's further use of the Pre-Petition Collateral, including the Cash Collateral, on a final basis, subject to the terms and conditions that will be provided for in a Final Order (as defined below) to be entered by the Court after its Final Hearing on this Motion. The Debtor's use of the Cash Collateral is necessary and appropriate for the continued operation and preservation of the Debtor's estate as a going concern.   Given its exigent financial circumstances, the Debtor effectively has no other source of financing aside from the use of the Cash Collateral.   Lender has agreed to the relief requested.

15.     Accordingly, the Debtor seeks entry of an Interim Order permitting it to utilize Cash Collateral pursuant to the agreed Budget attached as **Exhibit B**; and after the Final Hearing, the Debtor seeks entry of a Final Order permitting it to utilize the Cash Collateral pursuant to a further budget that shall be agreed and filed with the Court prior to the Final Hearing.

16.     As a condition to the use of the Cash Collateral, the Lender has required that the Debtor provide adequate protection to Lender for the Debtor's use of the Pre-Petition Collateral - in particular protection from the Diminution in Value (as defined below) of the Pre-Petition Collateral.  The Debtor and Lender have agreed that such protection should be granted according to the terms proposed below.

17.     The Debtor requests that the Court enter the Interim Order (i) authorizing the Debtor to use Cash Collateral as provided in the Interim Order; and (ii) granting to the Lender the liens and superpriority claims described in the Interim Order; and that the Court set a Final Hearing as soon as practicable after the expiration of the time period set forth in Bankruptcy Rule 4001(b)(2) for consideration of a Final Order granting the relief requested in this Motion on a final basis.

18.     The requested relief is more particularly described as follows, with the full and complete relief specified in the attached proposed Interim Order (the terms of which will be substantially similar to the Final Order).

**Use of the Cash Collateral**

19.     The Lender and the Debtor have agreed that the Debtor shall use the Cash Collateral only in compliance with the Budget.  The Debtor shall be permitted to use Cash Collateral solely to pay the expenses and costs set forth in the Budget for the Interim Period, in an amount not to exceed those amounts set forth in the Budget, subject to the Permitted Variance (as defined below).  The Debtor's compliance with the Budget shall be tested weekly and the

Debtor must comply with the Budget such that the Debtor's actual disbursements from and after the Petition Date do not exceed either (a) the budgeted amount for each line-item expense in the Budget for such week by more than 5% or (b) the aggregate amount of all budgeted disbursements for such week by more than 10% (collectively, the "**Permitted Variance**").  On or before 12:00 p.m. Central time on every other Tuesday during the Interim Period, the Debtor shall submit to Lender a report showing Debtor's actual versus budgeted receipts and disbursements for the immediately preceding two weeks (each a "**Budget Variance Report**").

**Term of the Interim Period**

20.     Pursuant to Rule 4001(b)(2) of the Bankruptcy Rules, the Interim Order will remain in effect until the earlier of (a) 11:59 p.m. Central time on June 30, 2015 (the "**Maturity Date**"), (b) the Final Hearing, or (c) any Termination Event (as defined below).

**Limitations on Use of Cash Collateral and Carve Out**

21.     Cash Collateral and the Carve Out (as defined below) shall not be used to (a) prosecute any proceeding to challenge or otherwise contest the liens in favor of Lender securing the Prepetition Indebtedness, (b) prevent, hinder or delay Lender's exercise of its rights and remedies following the occurrence of a Termination Event (as defined below), or (c) asserting, commencing or prosecuting any claims or causes of action against Lender including, without limitation, any actions under chapter 5 of the Bankruptcy Code—*provided, however,* that up to a maximum amount of $15,000 of Cash Collateral may be used to pay the allowed fees and expenses of the Estate Professionals incurred in connection with investigating the validity, enforceability, perfection, or priority of the Prepetition Liens, during the Investigation Period.

**Termination Events**

      22.    The Lender and the Debtor have agreed that Debtor's authorization to use Cash Collateral shall immediately terminate upon the earliest to occur of any of the following events (each a "**Termination Event**") unless waived in writing by Lender:

    (a)    the end of the Interim Period (or such later date as may be agreed upon in writing by the Debtor and Lender), unless a superseding Final Order is entered by that time;

    (b)    the Debtor fails to comply with any material term of the Cash Collateral Orders within five days after delivery of written Notice of default from Lender, such Notice to be delivered via email to Debtor's counsel;

    (c)    Debtor's actual disbursements exceed budgeted disbursements by more than the Permitted Variance without the written consent of Lender;

    (d)    entry of an order, without the prior written consent of Lender, (i) converting this Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code; (ii) dismissing this Bankruptcy Case; (iii) appointing a trustee under chapter 7 or chapter 11 of the Bankruptcy Code or appointing an examiner with expanded powers (powers beyond those set forth in sections 1106(a)(3) and (4)) in this Bankruptcy Case; (iv) reversing, vacating, or otherwise amending, supplementing or modifying the Cash Collateral Orders; or (v) granting relief from the automatic stay to any creditor (other than Lender) holding or asserting a lien in collateral of the Lender or a reclamation claim;

    (e)    entry of an order (i) invalidating, subordinating, or otherwise sustaining any challenge to, the Superpriority Claims or Adequate Protection Liens (each as defined below) granted to Lender in the Cash Collateral Orders, or (ii) granting any relief under section 506(c) of the Bankruptcy Code with respect to the Pre-Petition Collateral;

    (f)    the filing by the Debtor of any motion in this Bankruptcy Case without Lender's prior written consent: (i) to obtain financing under section 364 of the Bankruptcy Code from any person or entity other than Lender; (ii) to grant any lien or offering any collateral to any person or entity other than Lender; (iii) to recover from any portion of the Pre-Petition Collateral any costs or expenses of preserving or disposing of collateral under section 506(c) of the Bankruptcy Code.

**The Investigation Period**

23.     The findings and all other provisions of this Interim Order shall be binding upon the Debtor immediately and upon all other parties in interest without defense, claim, or counterclaim of any kind, including without limitation, the Committee (should such a committee be appointed), and any other statutory committees appointed in this Bankruptcy Case, unless: (a) a party in interest (including the Debtor or the Committee and any other statutory committee appointed in this Case) has filed an adversary proceeding, objection, or other contested matter (subject to the limitation set forth below) challenging the amount, validity, enforceability, perfection, priority, extent, or unavoidability of the Pre-Petition Indebtedness or the Pre-Petition Liens, or otherwise asserting any claims or causes of action against the Lender for or on behalf of the Debtor's estate, if filed by any party other than the Committee no later than the date that is ninety days after the entry of this Order or, if filed by the Committee, no later than the date that is the earlier of (i) sixty days after the date upon which such Committee is appointed or (ii) one hundred twenty days after the entry of this Order (the "**Investigation Period**"), and (b) the Court rules in favor of the plaintiff in any such timely filed adversary proceeding, objection, or other contested matter and such ruling becomes a final order.

24.     If no such adversary proceeding, objection, or other contested matter is commenced during the Investigation Period, the provisions of the Cash Collateral Orders shall be binding upon the Debtor and all other parties in interest without defense, claim, or counterclaim of any kind, including, without limitation, any statutory committees appointed in this Bankruptcy Case, and any trustee subsequently appointed in the Bankruptcy Case, or in the event of a conversion of this Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code, upon the chapter 7 trustee, and: (a) the repayment of the Pre-Petition Indebtedness shall be deemed final and indefeasible, not subject to subordination and otherwise unavoidable, and not subject to

defense, counterclaim, or offset of any kind; (b) the Pre-Petition Indebtedness shall constitute allowed claims, not subject to subordination and otherwise unavoidable, for all purposes in the Debtor's Bankruptcy Case and any subsequent chapter 7 case; (c) the Pre-Petition Liens on the Pre-Petition Collateral shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind, subordination and otherwise unavoidable; and (d) the Lender, the Pre-Petition Indebtedness, the Loan Agreement and all related documents, and the Pre-Petition Liens on the Pre-Petition Collateral shall not be subject to challenge by any party in interest seeking to exercise the rights of the Debtor's estate, including without limitation, any successors thereto.  The Investigation Period may be extended by agreement upon prior written approval of Lender.

**Adequate Protection Liens**

25.     The Debtor and Lender agree that Lender is entitled, pursuant to sections 361, 362, and 363(e) of the Bankruptcy Code, to adequate protection of its interests in the Pre-Petition Collateral on account of the Debtor's use of the Pre-Petition Collateral and any decrease in value of such interests (the "**Diminution in Value**").  As adequate protection for Lender's interest in the Pre-Petition Collateral, the Debtor requests that the Lender be granted (effective upon the Petition Date and without the necessity of the execution or filing by the Debtor or Lender of mortgages, security agreements, pledge agreements, financing statements, or otherwise), the following:

(a)     Adequate Protection Liens.  Subject to the Carve Out (as defined below), Lender is hereby granted valid and perfected additional and replacement security interests in, and liens upon (the "**Adequate Protection Liens**"), all of the Debtor's right, title, and interest in, to, and under (i) all assets in which the Lender holds validly perfected liens as of the

Petition Date[7]; and (ii) all of the Debtor's now owned and after-acquired real and personal property, assets and rights, of any kind or nature, wherever located, including, without limitation contracts, property, plant, equipment, general intangibles, documents, instruments, interests in leaseholds, patents, copyrights, trademarks, trade names, and all other intellectual property, cash, and cash collateral of the Debtor (whether maintained with Lender or other financial institutions), any investment of such cash and cash collateral, inventory, accounts receivable, any cause of action (*excluding* avoidance or other causes of action arising under chapter 5 of the Bankruptcy Code and timely asserted claims against the Lender as provided in paragraph 21 of the Interim Order ), and the proceeds thereof (whether recovered by judgment, settlement or otherwise), any right to payment whether arising before or after the Petition Date, and the proceeds, products, rents and profits of all of the foregoing (collectively, the "**Adequate Protection Collateral**").  As this is a "significant provision" under the governing procedures for this Court, the reasons this relief is warranted are discussed separately, in section V. below. The Adequate Protection Liens shall not be subject to any lien that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code.

(b)      <u>Superpriority Claim</u>.  To the extent of any Diminution in Value, but subject to the Carve Out, the Lender shall have an allowed superpriority administrative expense claim as provided in and to the full extent allowed by sections 503(b) and 507(b) of the Bankruptcy Code and otherwise (the "**Superpriority Claim**").  No costs or expenses of

---

[7] As noted above, several entities may hold security deposits that could fall within the broad definition of Cash Collateral or the definition of collateral for these Adequate Protection Liens.  No validly held security deposits are impacted by the relief sought in this Motion and to be granted in the proposed Interim Order or the anticipated Final Order

administration which have been or may be incurred in this Bankruptcy Case (including following any conversion of this Bankruptcy Case under section 1112 of the Bankruptcy Code, or any other related proceedings), and no priority claims are, or will be, prior to or on a parity with the Superpriority Claim.  As this is a "significant provision" under the governing procedures for this Court, the reasons this relief is warranted are discussed separately, in section V. below.

(c)      Additional Terms.   While the Debtor has sought to summarize the primary material terms of the proposed adequate protection, the relevant terms of the proposed adequate protection are set forth in the Interim Order which is served concurrently with this Motion.

**Carve Out**

26.      The Debtor has or intends to retain certain professionals for the benefit of the estate, including the undersigned proposed counsel for the Debtor, Gregory S. Milligan of Harney Management Partners, LLC as the Chief Restructuring Officer (the "**CRO**"), Miller, Egan, Molter & Nelson LLP, special corporate counsel to the Debtor ("**Corporate Counsel**"), and Kilyk & Bowersox, P.L.L.C., special intellectual property counsel to the Debtor ("**IP Counsel**," and together with Debtor's counsel, Corporate Counsel and the CRO, the "**Estate Professionals**").  The Lender and the Debtor have agreed to carve out certain fees of the Estate Professionals from the liens and certain other relief requested.

27.      The pre-petition retainers of (a) $75,000 (the "**TS Retainer**"), paid to Debtor's counsel, (b) $25,000 (the "**CRO Retainer**"), paid to the CRO and (c) $50,000 (the "**IP Retainer**"), paid to IP Counsel, shall not be subject to the Pre-Petition Liens or Adequate Protection Liens and shall be excluded from the Pre-Petition Collateral and Adequate Protection Collateral.

28.     Lender agrees that the proceeds from the disposition of Lender's Pre- and Post-Petition Collateral—subject to a limit of no more than the following amounts for the referenced Estate Professionals, (i) $75,000 for Debtor's counsel and (ii) $50,000 for the CRO (collectively, the "**Carve Out**")—may be used to pay Court approved administrative expense claims of the foregoing professionals.

29.     In addition, unpaid statutory fees payable to the United States Trustee or the clerk of the Court pursuant to 28 U.S.C. § 1930 may be paid from the disposition of Lender's Pre- and Post-Petition Collateral.  The terms of this paragraph shall survive the dismissal of this Bankruptcy Case.

**Waiver of Surcharge**

30.     Except for the Carve Out, the Lender and Debtor have agreed that Debtor will waive all rights under section 506(c) of the Bankruptcy Code and shall not seek to charge against any Pre-Petition Collateral or Cash Collateral any costs or expenses that have been incurred, or that may be incurred during the pendency of this Bankruptcy Case, to preserve or dispose of any Pre-Petition Collateral.  As this is a "significant provision" under the governing procedures for this Court, the reasons this relief is warranted are discussed separately, in section V. below.

**Final Hearing and Final Order**

31.     The Debtor requests that in addition to granting the relief contained in the Interim Order, the Court also set a Final Hearing on a Final Order, a proposed form of which will be submitted to the Court and filed with the Clerk of the Bankruptcy Court no less than five business days before the Final Hearing.

32.     The Debtor proposes that the Final Hearing be set no later than [twenty calendar days] from the date of this Motion.  The Debtor proposes that any objections to the relief requested in the Motion should be made in writing and filed with the Clerk of the Bankruptcy

Court, with a copy served upon counsel for the Debtor and the Lender, so that any such objections are received on or before 4:00 p.m. (prevailing Central time) (the "**Objection Deadline**") no less than three business days before the Final Hearing.

**Limited Modification of Automatic Stay**

33.     The Debtor requests that the automatic stay imposed by virtue of section 362 of the Bankruptcy Code be vacated and modified insofar as necessary to permit (i) the Debtor to grant the Postpetition Liens and Adequate Protection Liens to the Lender; and (ii) the parties to take any action specifically authorized or contemplated by the Cash Collateral Orders (if entered).

## V.  "SIGNIFICANT PROVISIONS"

34.     The relief requested includes several of the "significant provisions" under the Procedures for Complex Chapter 11 Cases in this district.  Thus, as required by those Procedures, reasons are given in this separate section for the approval of those provisions.

35.     **Cross-Collateralization**.  As noted above, the Debtor and the Lender believe that the Lender's Pre-Petition Collateral likely covers all or substantially all of the Debtor's assets, although certain narrow assets may not have been included.  The relief requested in this Motion would provide adequate protection to the Lender in the form of an Adequate Protection Lien covering all of the Debtor's assets, thus potentially slightly expanding the collateral of the Lender—although only to the limited extent of Diminution in Value of the Lender's existing collateral.  The Debtor believes this could arguably be characterized as cross-collateralization. Such relief is warranted because it will be limited in scope, and because the Lender would not otherwise agree to its collateral being put at risk without any direct compensation (for instance in the form of direct interest or adequate protection payments).

36.     **Waiver of Surcharge**.  Except for the Carve Out, the Lender and Debtor have agreed that Debtor will waive all rights under section 506(c) of the Bankruptcy Code and shall not seek to charge against any Pre-Petition Collateral or Cash Collateral any costs or expenses that have been incurred, or that may be incurred during the pendency of this Bankruptcy Case, to preserve or dispose of any Pre-Petition Collateral. This relief is warranted under the circumstances of this Bankruptcy Case because, unless the Investigation Period yields contrary results, the Lender already holds a security interest in all or substantially all of the Debtor's assets.  In addition, because of the Carve Out, a substantial amount of Estate Professionals' fees will be available to fund acts taken to preserve or dispose of the Pre-Petition Collateral or Cash Collateral.

37.     **Administrative Claim**.  The Lender is being granted a Superpriority Claim to the extent of the Diminution in Value but subject to the Carve Out.  This claim is necessary given that the Lender's collateral is at substantial risk, which would otherwise go uncompensated.  The Lender is not, for instance, receiving interest payments or any other form of direct payment.

## VI. <u>NOTICE</u>

38.     Notice of this  Motion has been  given to those listed  on the attached service list, including  the  following:   (i) counsel for the Lender, Winstead PC, Attn: J. Frasher Murphy, Esq., 500 Winstead Building, 2728 N. Harwood St., Dallas, Texas 75201; (ii) counsel for any Committee appointed in this Bankruptcy Case or, if no Committee has yet been appointed, the Debtor's 20 largest unsecured creditors; (iii) the United States Trustee; (iv) subordinated secured creditors; (v) any party that has filed a notice of appearance in this Bankruptcy Case; and (vi) all applicable government agencies to the extent required by the Bankruptcy Rules and the local rules of this Court.

# VII. **PRAYER**

WHEREFORE, the Debtor respectfully requests that the Court (a) allow the Motion and enter the Interim Order, (b) set a final hearing to consider entry of the Final Order, (c) grant such other and further relief as is just and proper.

Dated:  June 2, 2015
        Austin, Texas

                            Respectfully Submitted,

                            TAUBE SUMMERS HARRISON TAYLOR
                            MEINZER BROWN LLP

                                 /s/ MORRIS D. WEISS
                            Eric J. Taube
                            State Bar No. 19679350
                            Morris D. Weiss
                            State Bar No. 21110850
                            Christopher G. Bradley
                            State Bar No. 24069407
                            100 Congress Avenue, Suite 1800
                            Austin, Texas 78701
                            (512) 472-5997
                            (512) 472-5248 (FAX)
                            etaube@taubesummers.com
                            mweiss@taubesummers.com
                            cbradley@taubesummers.com

                            PROPOSED ATTORNEYS FOR DEBTOR
                            AND DEBTOR IN POSSESSION

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document has been electronically on all parties receiving the Court's ECF notices, and upon the parties listed on the attached Service List by depositing same in the United States First Class Mail (unless otherwise noted) on the 2nd day of June, 2015.

                               /s/ Morris D. Weiss
                            Morris D. Weiss

## SERVICE LIST

**Debtor**
Oxane Materials, Inc.
467 W. 38th Street
Houston, TX 77018

**Debtor's Counsel**
Taube Summers et al
Attn: Eric J. Taube and Morris D. Weiss
100 Congress Ave., 18th Floor
Austin, TX 78701

**United States Trustee**
United States Trustee (*via ECF to*
*USTPRegion07.HU.ECF@USDOJ.GOV*)

Christine March (*via ECF to*
*christine.a.march@usdoj.gov*)

**Government Agencies**
Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101-7346

Delaware Secretary of State
1209 Orange Street
Wilmington, DE 19801

**Bank**
Comerica Bank
333 West Santa Clar St.
12th Floor
San Jose, CA 95113

**20 Largest Unsecured Creditors**
Total Energy Ventures International (SAS
2 place Jean Millier
La Defense 6
92078 Paris La Defense Cedex
FRANCE

BP Alternative Energy International Ltd
150 West Warrenville Road, J-8
Naperville, IL 60563

Zschimmer & Schwarz Inc.
70 GA Highway 22W
Milledgeville, GA 31061

Alan L. Sarroff
43 Meadow Woods Road
Great Neck, NY 11020-1324

Arkansas Economic Development
Commission
900 West Capitol Avenue
Suite 400
Little Rock, AR 72201

Thermal Specialties Construction Service
6314 East 15th St
Tulsa, OK 74112

Aluchem Inc.
One Landy Lane
Cincinnati, OH 45215

Crawford County Tax Collector
300 Main St. Rm #2
Van Buren, AR 72956

Paresh D. Kanani
41 Holmead Road
London, SW6 2JD
UNITED KINGDOM

Equipment Pro, Inc.
721 Parkwood Dr
Ste. Genevieve, MO 63670

Hess Pumice Products, Inc.
100 Hess Drive
PO Box 209
Malad City, ID 83252

Glencore Ltd.
Three Stamford Plaza
301 Treeser Blvd
Stamford, CT 08901

Schneck Process, LLC
7901 NW 107th Terrace
Kansas City, MO 64153

Spraying Systems Co.
2230 Merchants Way
Suite 150
Katy, TX 77449

Cockrum Welding Fabrication, Inc.
1530 Construction Way
Van Buren, AR 72956

Savino Del Bene USA, Inc.
1065 Texan Trail
Suite 250
Grapevine, TX 76051

Lazard Freres & Co LLC
30 ROCKEFELLER PLAZA
New York, NY 10020

Staccato International Co.
15/F, No 80
Gloucester Road
Wan Chai, HONG KONG

TEC Staffing Services
1825 North A Street
Fort Smith, AR 72901

Eutectic Corporation
N94 W 14355 Garwin Mace Drive
Menomonee Falls, WI 53051

**Noteholders**
Delta Centauri LLC
2800 Post Oak Boulevard, Suite 225
Houston, TX 77056

Daniel R. or Jennifer S. Pickering, JTWR
5300 Bayou Glen Road
Houston, TX 77056

Christopher E. Coker
4108 Lillian, Unit B
Houston, TX 77007

Nolan Lehmann
1603 Sterling Gate Court
Spring, TX 77379

Mark Mack
918 Chimney Rock Road
Houston, TX 77056

Lawrence and Mary Whalley
5 Carsey Lane
Houston, TX 77024

Lawrence G. Whalley
2800 Post Oak Boulevard, Suite 2020
Houston, TX 77056

Goldhill Investments LP
2800 Post Oak Boulevard
Suite 2020
Houston, TX 77056

Nash Investments, LP
145 Cane Creek IND Park Road
Fletcher, NC 28732

Paresh D. Kanani
41 Holmead Road
London, SW6 2JD
UNITED KINGDOM

Harald Stanzer
9615 Appin Falls Drive
Spring, TX 77379

Malcolm and Elizabeth Gillis
6100 Main Street, MS-22
Houston, TX 77005

Renfro Investments LP
145 Cane Creek IND Park Road
Fletcher, NC 28732

Jeffrey Pesot
52 Village Drive
Basking Ridge, NY 07920

Total Energy Ventures International (SAS
2 place Jean Millier
La Defense 6
92078 Paris La Defense Cedex
FRANCE

BP Alternative Energy International Ltd
150 West Warrenville Road, J-8
Naperville, IL 60563

Russell H. Schlattman, II
13303 Champion Forest Drive, Suite 7
Houston, TX 77069

David Heikkinen
2255 Goldsmith Street
Houston, TX 77030

Simon Fiduciaria S.p.A
(fbo Giovanni Valeri Manera)
Via del Carmine N.10
10122 Torini
ITALY

Joseph R. Hyde, III
17 W. Pontotoc, Suie 100
Memphis, TN 38103

Vivace Capital LLC
45 Rockefeller Plaza, Suite 2000
New York, NY 10111

Fulton S.r.l
Via Manfredo Fanti N.2
42124 Reggio Emilia
ITALI

Woodway Financial Advisors, as
Custodian for the mack Elbert Coker, DDS
10000 Memorial Drive, Suite 650
Houston, TX 77024

**Parties Requesting Notice**
Comerica Bank
c/o Winstead PC
Attn: J. Frasher Murphy (*via ECF*)
500 Winstead Building
2728 N. Harwood St.
Dallas, TX 75201

Comerica Bank
c/o Winstead PC
Attn: Sean B. Davis (*via ECF*)
1100 JPMorgan Chase Tower
600 Travis Street
Houston, TX 77002